UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| RENEE LEA-RUEDA,<br><br>  Plaintiff,<br><br>v.<br><br>FEDERAL RESERVE BANK OF MINNEAPOLIS,<br><br>  Defendant. | Court File No. _____<br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.  Plaintiff Renee Lea-Rueda (sometimes "Plaintiff") was an employee of the Federal Reserve Bank of Minneapolis ("Defendant" or "Bank") for over six years, with her last held position as a Business Systems Analyst IV for four years, until her termination on January 28, 2022, when the Bank fired her because of her religious objection to the COVID-19 vaccine.

2.  Several months after the COVID-19 vaccine became available to Americans, the Bank instituted a mandatory vaccination policy ("Policy"). Ms. Lea-Rueda applied for an exemption, and the Bank exempted her from that Policy. Ms. Lea-Rueda was fully remote at the time.

3.  Then, on December 17, 2021, Defendant suddenly reversed course and notified Ms. Lea-Rueda that it would no longer accommodate her religious beliefs because doing so would somehow create for it an "undue hardship." This is despite (a) her willingness to mask, test, and distance, (b) the in-person aspects of her position having been eliminated,

1

(c) the Bank allowing employees to be unvaccinated for months while a vaccine was available, (d) the availability of alternatives which would allow her to keep working and not affect the safety of her coworkers, and (e) scientific evidence available at the time that the COVID-19 vaccines protect the individual recipients, but do not reduce the virus' transmission.

4. There was and is no undue hardship for the Bank to keep Ms. Lea-Rueda employed; rather, upon information and belief, the Bank accommodates other employees without any real difference between those employees and Ms. Lea-Rueda in terms of their proximity to others.

5. To make matters worse, the Bank failed to make any effort, as part of the interactive process, to provide Ms. Lea-Rueda opportunities to continue in her same job minimally modified or to work different jobs at the Bank to accommodate her religious objection, even though she asked about a number of other opportunities there. The Bank made no effort to help her, despite its obligation to do so.

6. Because Ms. Lea-Rueda's sincerely held religious beliefs prevent her from becoming vaccinated with the COVID-19 vaccine, and because the Bank's vaccine mandate was not narrowly tailored to serve a compelling state interest, she is entitled to relief under Title VII of the Civil Rights Act and the Religious Freedom Restoration Act ("RFRA").

## THE PARTIES

7. Plaintiff Renee Lea-Rueda resides in Falcon Heights, Minnesota, within the District of Minnesota.

8.      Defendant Bank is one of twelve Federal Reserve Banks that make up the Federal Reserve System. Its offices are located at 90 Hennepin Avenue, Minneapolis, Minnesota 55401, within the District of Minnesota. The Bank is an instrumentality of the United States government, established by the Federal Reserve Act, 12 U.S.C. § 341 ("the FRA"). *See Fed. Res. Bank v. Metrocentre Improv. Dist. #1*, 657 F.2d 183, 185 n.2. (8th Cir. 1981). The Bank is an employer as defined by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

## JURISDICTION AND VENUE

9.      The Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 42 U.S.C. §§ 2000e-(j) and 2000e-2 (Title VII), and 42 U.S.C. § 2000bb-1(c) ("RFRA"). Plaintiff alleges federal questions arising under the laws of the United States under Title VII and RFRA, the Bank is a covered entity under RFRA, and this Court has jurisdiction in civil actions against the United States, of which the Bank is a federal instrumentality under the RFRA.

10.     This Court has authority to award the requested relief pursuant to Title VII of the Civil Rights Act and RFRA; and costs and attorneys' fees pursuant to Title VII and 42 U.S.C. § 1988(b).

11.     This Court has both general and specific jurisdiction over the Bank, which is located within the District of Minnesota, and its acts alleged herein took place in the District of Minnesota.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), (b)(2) and (e) and 42 U.S.C. § 2000e-5(f)(3) because the Bank is an instrumentality of the United States

doing business in the District, and a substantial part of the events or omissions giving rise to Ms. Lea-Rueda's claims occurred in this judicial District.

## FACTUAL ALLEGATIONS

13. Ms. Lea-Rueda began her employment with the Bank in January 2016, and began her last held position in March 2018. In Ms. Lea-Rueda's last held position, she was a Business Systems Analyst IV in the Bank's Technology Department. In this position, Ms. Lea-Rueda was responsible for being the subject-matter expert on the Board Portal Application used by all of the banks in the Federal Reserve System.

14. On or about March 11, 2020, at the onset of the COVID-19 pandemic in the United States, the Bank informed its workforce, including Ms. Lea-Rueda, that it was implementing a mandatory remote work policy until employees were otherwise notified.

15. From this time through January 2022, Ms. Lea-Rueda performed all of her job duties remotely with no reduction in her performance.

16. Beginning in March 2021, COVID-19 vaccinations became widely available to adults in the United States.

### Plaintiff's Sincerely Held Religious Beliefs

17. Ms. Lea-Rueda was raised as a Lutheran Christian and holds non-denominational Christian beliefs. She also holds some spiritual beliefs which do not fit neatly into any organized religion, and she holds some beliefs espoused by the Roman Catholic Church.

18. Ms. Lea-Rueda's religious beliefs include her belief that God created human beings in His likeness and that her God-given immune system is sufficient to protect her. Furthermore, she believes that vaccines, biological technologies, and gene therapies

interfere with, and permanently modify natural defenses and God-given DNA. Finally, Ms. Lea-Rueda believes that her body is a temple for the Holy Spirit (see 1 Cor. 6:19-20), that she should strictly disallow any unclean, unnatural, and unknown substances in her body, and that God has provided on earth what human beings need to heal and be healthy. Ms. Lea-Rueda therefore does not believe in taking vaccines such as the COVID-19 vaccines available in the United States. Nor does she believe in taking any vaccines or new biological technology, such as mRNA injections.

19. A true and correct copy of Ms. Lea-Rueda's accommodation request describing some of her relevant religious beliefs is attached as **Exhibit 1 at Lea-Rueda 001.**

20. Ms. Lea-Rueda's religious objection to the COVID-19 vaccine is sincere, as the Bank admitted.

**The Bank's Policy and Ms. Lea-Rueda's Request for Accommodation**

21. In July 2021, the Bank informed its employees of its Policy requiring all employees to receive a COVID-19 vaccination or else submit a request for religious or medical accommodation, as applicable.

22. As part of its religious exemption process, the Bank created a Request for Accommodation attestation form. Upon being made aware of the policy, Ms. Lea-Rueda requested a religious exemption from the policy by submitting the form.

23. The Bank's Policy conflicts with Ms. Lea-Rueda's sincerely held religious beliefs.

24. In August of 2021, the Bank informed Ms. Lea-Rueda that it would accommodate, on a temporary basis, her religious beliefs forbidding her from receiving a COVID-19 vaccination. **Exhibit 1 at Lea-Rueda 002**.

25. As part of her accommodation, if on Bank premises, she was required to wear a Bank-issued mask, maintain a physical distance from other employees, and submit to regular COVID-19 testing, but Ms. Lea-Rueda did not work on-site at the Bank even after some employees returned on-site in 2021.

### After Ms. Lea-Rueda Requested a Vaccine Accommodation, Her Supervisor Began to Treat Her With Hostility

26. At nearly the same time Ms. Lea-Rueda sought and obtained her vaccine accommodation, her manager/supervisor began to treat her with hostility.

27. Ms. Lea-Rueda's manager was so hostile to her because of her seeking a religious accommodation that it led to Ms. Lea-Rueda suffering a nervous breakdown.

28. The hostility against Ms. Lea-Rueda included making false and defamatory statements about her.

29. Ms. Lea-Rueda was forced to take FMLA and short-term disability leave to address the health problems that arose because of the Bank's hostility to her.

30. Ms. Lea-Rueda suffered severe emotional distress and damage to her mental health because of the Bank's religious discrimination against her.

31. Ms. Lea-Rueda sought professional counseling and mental health support with a licensed therapist at Paradigm Rehabilitation as a result of the Bank's discrimination against her.

32. The Bank further violated Ms. Lea-Rueda's privacy and exacerbated the harm of its discrimination against her by discussing her personal medical history and health with her mental health professional.

33. The Bank used the pretext of examining Ms. Lea-Rueda's "ability to return to work" as a false reason for asking Ms. Lea-Rueda's mental health professional if she could be vaccinated consistent with her mental health condition.

34. Ms. Lea-Rueda continues to suffer lingering emotional distress and mental health damages because of the Bank's religious discrimination against her.

**The Bank Abruptly Reverses Course, Revokes Ms. Lea-Rueda's Accommodation, Fails to Engage in the Interactive Process, Fails to Accommodate Her, and Terminates Her Because of Her Religious Beliefs.**

35. On December 17, 2021, the Bank suddenly reversed course from its initial accommodation decision and notified Ms. Lea-Rueda that it would no longer accommodate her religious beliefs because of a claimed "undue hardship." **Exhibit 1 at Lea-Rueda 003-004.**

36. The Bank told Ms. Lea-Rueda that she would have to receive her first vaccination dose no later than January 7, 2022, or she would be put on unpaid leave and then terminated.

37. On January 3, 2022, under duress, emotional distress, and because of extraordinary pressure from the Bank threatening her job via its religious discrimination, Ms. Lea-Rueda told the Bank's HR staff assigned to the matter that she planned to be vaccinated.

38. Ms. Lea-Rueda did not get vaccinated and expressly retracted that statement in a subsequent email because it was made under duress, emotional distress, and because of the extraordinary pressure from the Bank threatening her job via its religious discrimination. Ms. Lea-Rueda did not become vaccinated, and will not be vaccinated, for COVID-19.

39. Accommodating Ms. Lea-Rueda would not have imposed, and does not impose, an undue hardship on the Bank.

40. Prior to the revocation of her accommodation, the Bank would have allowed Ms. Lea-Rueda to mask and distance for months had she been working on-site during that time.

41. The Bank did not require any employee to be vaccinated for several months despite the availability of the vaccines to all Americans in March and April 2021.

42. As part of its reasoning for revoking Ms. Lea-Rueda's accommodation, the Bank claimed that, since employees were no longer going to be working remotely, the need to have close contact with a significant number of individuals would increase.

43. During the entire time Ms. Lea-Rueda was allowed to mask and distance if at the Bank in-person, there were hundreds of construction workers working within the Bank's building daily not required by the Bank to be vaccinated, or the Bank did not confirm that those construction workers were vaccianted.

44. The Bank falsely claimed that it would be an undue hardship to allow Ms. Lea-Rueda to mask, test, and maintain physical distance because, so the Bank claimed, she could not consistently maintain physical distancing while performing the essential functions of her role.

45. However, Ms. Lea-Rueda's job was in fact remote by its very nature because she remotely supported the corporate secretary function of each of the other 11 Federal Reserve Banks, located across the United States, as well as some executive committees at the Board of Governors, located in Washington, D.C., and vendors located in Pennsylvania.

46. The Bank's claim that Ms. Lea-Rueda could not maintain adequate physical distancing while performing the essential functions of her role is false.

47. Upon information and belief, the Bank accommodates other employees who must be in close proximity to their fellow employees as part of a hybrid on-site and remote work arrangement.

48. The Bank's December 17, 2021 letter to Ms. Lea-Rueda falsely states that her then-current role required her "to provide one-on-one in-person IT support where it will not be feasible to maintain six feet of physical distance from others."

49. In fact, in October 2021, prior to that letter, Ms. Lea-Rueda's team leadership made permanent, non-COVID-related changes to her position such that she was no longer required to support in-person Board meetings, and would no longer have to provide hands-on tablet/smart device support.

50. Ms. Lea-Rueda's entire role could have been performed remotely on an ongoing basis, as her duties included: supporting the Federal Reserve Districts nationally, which was always remote; and the hands-on aspects of her Minneapolis-based job had been eliminated.

51. Further, Ms. Lea-Rueda went above and beyond the Bank's initial accommodation requirements to suggest to the HR team assigned to the matter additional safeguards that she would have observed, and which would have addressed the Bank's concerns related to COVID-19, including wearing an N-95 mask, socially distancing, and undergoing testing on a regular basis.

52. The Bank refused to engage in any meaningful discussions with Ms. Lea-Rueda about any further accommodations or any other jobs with the Bank that would allow her to maintain her employment.

53. Before she was terminated, the Bank announced that the return to in-person work at the Bank would be delayed until early March.

54. Despite this, Ms. Lea-Rueda was notified on January 28, 2022, that her employment was terminated for failure to comply with the Vaccination Policy. **Exhibit 1 at Lea-Rueda 005-006**.

## The Defects of the Bank's Vaccination Mandate

55. At the time the Bank revoked Ms. Lea-Rueda's accommodation and forced its employees to get vaccinated or be fired, evidence was publicly available to the Bank that demonstrated that the COVID-19 vaccines available to Americans do not reduce transmission of the COVID-19 virus but instead only protect the individual recipients of the vaccine from serious infection. *E.g.,* Jennifer Frazer, "The Risk of Vaccinated COVID Transmission Is Not Low, *Scientific American*, Dec. 16, 2021, available at https://www.scientificamerican.com/article/the-risk-of-vaccinated-covid-transmission-is-not-low/ (last visited March 10, 2023); Carlos Franco-Paredes*,* "Transmissibility of SARS-CoV-2 among fully vaccinated individuals," *The Lancet*, Jan. 1, 2022, *available at* https://www.thelancet.com/journals/laninf/article/PIIS1473-3099(21)00768-4/fulltext (last visited March 10, 2023).

56. Further, measures other than mandatory vaccination, such as temperature checks, mask-wearing, social distancing, regular testing, and quarantining of infected individuals

are as effective, if not more effective, at controlling the spread of COVID-19 than mass-vaccinating the population, all of which Ms. Lea-Rueda was willing to do.

57. Given that the "safety risks" posed by Ms. Lea-Rueda have been the only interest identified by the Bank, and given that safety is advanced little or not at all by the vaccination mandate imposed by the Bank, the Bank's mandate lacks a rational basis, much less a compelling state interest, and is not narrowly tailored to advance any government interest.

58. The Bank's decision to deny Ms. Lea-Rueda an ongoing accommodation after initially granting her one cannot be justified under either the rational basis or compelling interest test.

## CAUSES OF ACTION

### Count One
### 42 U.S.C. § 2000bb et seq.

### Violation of the Religious Freedom Restoration Act (RFRA)

59. Plaintiff reincorporates the foregoing as if fully written herein.

60. The Bank is subject to RFRA because it is an "instrumentality" of the Federal government. 42 USC §2000bb-2(2).

61. RFRA states that the government shall not substantially burden a person's exercise of religion, even by means of a rule of general applicability. 42 U.S.C. § 2000bb-1(a).

62. RFRA protects any exercise of religion, whether or not compelled by, or central to, a system of religious belief. 42 U.S.C. § 2000cc-5(7)(A).

63. The exercise of religion involves not only belief and profession but also the performance of (or abstention from) physical acts for religious reasons.

64. Plaintiff sincerely believes that the exercise of her religion prevents her from submitting to injection with any of the available COVID-19 vaccines.

65. The Bank has not contested the sincerity of Plaintiff's beliefs that the exercise of her religion prevents her from receiving a COVID-19 vaccination.

### *Substantial Burden*

66. RFRA imposes strict scrutiny on all actions of the federal government (including the Bank as a federal "instrumentality") which substantially burden a person's exercise of religion. 42 U.S.C. § 2000bb-1(b).

67. A person's exercise of religion is substantially burdened whenever a measure imposes substantial pressure on an adherent to modify his or her behavior and to violate his or her beliefs.

68. A vaccination policy that terminates the employment of a person who refuses vaccination on account of his religious beliefs presents a substantial burden on that person's exercise of religion.

69. Because Plaintiff's religious beliefs prevented her receiving a COVID-19 vaccination, the Defendant's Vaccine Policy imposed on Plaintiff the choice between violating her religious beliefs or else being terminated and losing her livelihood.

70. By pressuring Plaintiff to violate her religious beliefs in order to retain her employment, the Defendant imposed a substantial burden on Plaintiff's exercise of religion.

### *Strict Scrutiny Analysis*

71. Under RFRA, the Defendant's Vaccine Policy is subject to strict scrutiny because it imposes substantial burdens on Plaintiff's religious exercise. 42 U.S.C. § 2000bb-1(b).

72. Strict scrutiny requires that, before imposing a substantial burden on an individual's exercise of religion, the government must demonstrate that application of the burden to that particular individual (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means to achieving that interest.

### *Defendant Has No Compelling Interest*

73. Under RFRA, Defendant must establish that it has a compelling governmental interest in imposing a religious burden on the Plaintiff.

74. Defendant must show a compelling governmental interest and prove that terminating Plaintiff's employment unless she consented to being vaccinated was the least restrictive means possible in achieving that alleged interest.

75. As demonstrated by Plaintiff's ability to perform the essential functions of her job for months while working remotely, and her willingness to practice masking and social distancing, as well as by the fact that Defendant initially granted a religious accommodation to her under circumstances not materially different than those when it revoked that accommodation, the Defendant does not have a compelling governmental interest in burdening Plaintiff's religious practice by mandating her vaccination. There is no rational basis, much less a compelling governmental interest, in terminating Plaintiff's employment for lack of COVID-19 vaccination.

76. The Defendant ignored the fact that Plaintiff was doing her job throughout the pandemic both before she was granted an accommodation and after with no material difference in her job duties and with no problems.

77. During the time since COVID-19 vaccines became available, and during the months since Plaintiff had applied for a religious exemption, it had become clearly established that COVID-19 vaccinations did not achieve the only possible legitimate purpose of the mandate—to prevent transmission of the virus to other employees, contractors, or customers.

### *Defendant Did Not Use the Least Restrictive Means*

78. The least-restrictive-means standard is exceptionally demanding in that it requires the government to show that it lacks any adequate less restrictive means of achieving its desired goal. So long as the government can achieve its interests in a manner that does not burden religion, it must do so.

79. This standard requires Defendant to show that measures less restrictive of Plaintiff's religious exercise could not address its purported interest in reducing the spread of COVID-19.

80. Requiring Plaintiff to be vaccinated against COVID-19 is not the least restrictive means Defendant could have employed to serve its alleged compelling interest.

81. Plaintiff was able to perform the essential functions of her job while adhering to the Defendant's safety protocols that it deemed satisfactory for months without any adverse consequences.

82. At the very least, Defendant has an obligation to demonstrate that requiring Plaintiff to be vaccinated is the least restrictive way of pursuing its interests. That requires demonstrating why other paths to the same goal are all inferior, which Defendant cannot do.

83. Moreover, Defendant cannot establish that requiring Plaintiff to be vaccinated is the least restrictive means of pursuing a compelling interest compared to the means that have already been shown to be sufficient: i.e., allowing Plaintiff to work remotely or while wearing a mask and social distancing, as she had done or was required to do for months.

84. Defendant violated RFRA and damaged Plaintiff by doing so, as alleged herein. Defendant's wrongful actions caused Plaintiff nominal, actual, and compensatory damages, and Plaintiff is also entitled to her costs, disbursements, and reasonable attorney fees. 42 U.S.C. § 1988.

## Count Two
## 42 U.S.C. §§ 2000e, et. seq.

### Title VII Religious Discrimination

85. Plaintiff reincorporates the foregoing as if fully written herein.

86. By the acts, policies, and practices set forth in more detail above, Defendant has discriminated against Plaintiff in the terms and conditions of her employment on the basis of her religion, in violation of Title VII of the Civil Rights Act of 1964.

87. As alleged herein, Ms. Lea-Rueda holds sincere religious beliefs that preclude her from receiving a COVID-19 vaccine.

88. Ms. Lea-Rueda informed the Defendant of those beliefs and requested a religious exemption and reasonable accommodation from the Policy.

89. Defendant treated Ms. Lea-Rueda with hostility because of her request for and obtaining of a religious accommodation from the Policy.

90. When the Defendant revoked her accommodation, it also failed to initiate the interactive process regarding her accommodation request.

91. Despite Ms. Lea-Rueda's best efforts to initiate an interactive process, the Defendant made no effort to meaningfully engage in that process or to accommodate her sincerely held religious beliefs.

92. Beside the interactive process, the Bank failed to provide Plaintiff with a reasonable accommodation, and instead terminated her employment, thereby discriminating against her because of her religious beliefs.

93. The Bank's failure to accommodate Ms. Lea-Rueda has harmed and will continue to harm her.

94. By failing to engage in the interactive process or offer any reasonable accommodation, the Bank's discriminatory actions were intentional and/or reckless and in violation of Title VII.

95. Ms. Lea-Rueda filed charges with the EEOC complaining of these discriminatory actions on October 5, 2022. **Exhibit 2 at Lea-Rueda 007.**

96. She was issued a right-to-sue letter on January 20, 2023. **Exhibit 3 at Lea-Rueda 008.**

97.     This case is being filed on April 20, 2023, within 90 days of Ms. Lea-Rueda's receipt of the right-to-sue letter.

98.     By the acts, policies, and practices set forth in more detail above, the Defendant has discriminated against Ms. Lea-Rueda in the terms and conditions of her employment on the basis of her religion, in violation of Title VII of the Civil Rights Act of 1964.

99.     Defendant's wrongful actions caused Plaintiff nominal, actual, and compensatory damages, and Plaintiff is also entitled to her costs, disbursements, and reasonable attorney fees. 42 U.S.C. § 1988.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Renee Lea-Rueda respectfully requests that the Court enter judgment against Defendant and provide her with the following relief:

A. A declaratory judgment that the Bank violated Plaintiff's rights under RFRA;

B. A declaratory judgment that the Bank violated Plaintiff's rights under Title VII;

C. An award of nominal damages in favor of Plaintiff because of Defendant's violations of Title VII;

D. An award of actual and compensatory damages in an amount to be proven at trial, including back pay, front pay, treble damages and statutory penalties, interest, emotional distress and pain and suffering, and any damages or penalties available at law;

E. Reinstatement to Plaintiff's former position at the Bank, with credit for years of work service during the time she was illegally terminated, and wage and benefit

increases consistent with what an employee in her position would have received during her illegal termination, or front pay in the alternative;

F. An award of punitive damages because of the Bank's intentional discrimination against Plaintiff with malice and reckless indifference to her rights under RFRA and Title VII.

G. Reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988, upon post-judgment application for the same;

H. All and any further relief to which Plaintiff may be entitled; and

I. A trial by jury of all such matters properly tried as such is requested

**UPPER MIDWEST LAW CENTER**

Dated:  April 20, 2023

/s/ *James V. F. Dickey*
Douglas P. Seaton (#127759)
James V. F. Dickey (#393613)
8421 Wayzata Blvd., Suite 300
Golden Valley, Minnesota 55426
James.Dickey@umwlc.org
(612) 428-7000

*Attorneys for Plaintiff*